HAMP. GOHLSTON *v.* THE STATE.

(*Nashville.*   December Term, 1919.)

HOMICIDE.  Punishment for murder in first degree to be determined by
   jury.

   Public Acts 1919, chapter 5, section 1, vests the power to fix the
   punishment for murder in the first degree in the jury, the death
   penalty provided in Shannon's Code, section 6442, not being
   changed by Public Acts 1913 (1 st Ex. Sess.) chapter 36; and it
   was prejudicial error to withhold such power from the jury.

   Acts cited and construed: Acts 1919, ch. 5,   Acts 1829, ch. 23, sec.
   2; Acts 1837, ch. 29; Acts 1913, ch. 36; Acts 1915, ch. 181; Acts
   1917, ch. 14;

   Case cited and approved: Shipp v. State, 130 Tenn., 493,

   Codes cited and construed: Secs. 4597-99, 4600, 4601, 5257, (1858);
   Secs. 6438-40, 6441, 7232 (S.).

FROM SHELBY.

Error to the Criminal Court of Shelby County.—HON.
J. E. RICHARDS, Judge.

L. J. MONTEVERDE, for plaintiff in error.

FRANK M. THOMPSON, Attorney-General, for the State.

MR. JUSTICE HALL delivered the opinion of the Court.

On June 3, 1919, the grand jury of Shelby county re-
turned an indictment against plaintiff in error (who will
hereinafter be referred to as the defendant), charging him

with murder in the first degree upon the body of one Isaac Levy on the night of May 31, 1919, at his storehouse at 414 South Main street in the city of Memphis.

On June 23, 1919, the defendant was arraigned, and pleaded not guilty to the charge, after which he was put upon his trial before the criminal judge and a jury.

On June 25, 1919, the jury returned a verdict, finding the defendant guilty of murder in the first degree, but did not assess or fix his punishment for said offense. Upon the question of fixing the defendant's punishment the trial judge charged the jury as follows:

"When you retire to consider of your verdict you will first inquire: Is the defendant guilty of murder in the first degree? If you find, beyond a reasonable doubt, the defendant guilty of murder in the first degree, as charged in the indictment, you have nothing to do with the penalty. The law says, 'He shall suffer death by electrocution,' unless you, in your verdict, shall find and say there were mitigating circumstances, in which event the court may commute his punishment for life in the penitentiary of the State."

The jury found no mitigating circumstances, their verdict being, omitting the formal parts of it, in the following language:

"Who upon their oaths do say that the defendant is guilty of murder in the first degree."

Defendant filed motions for a new trial and in arrest of judgment, which were severally overruled by the trial judge, who entered a judgment sentencing him to be electrocuted in the manner prescribed by statute on August

22, 1919. From this judgment the defendant has appealed to this court, and has assigned errors. The assignments of error challenge the verdict and judgment upon two grounds:

(1) That the evidence preponderates against the guilt of the defendant, and in favor of his innocence.

(2) That the verdict of the jury is null and void because the jury failed to fix the defendant's punishment as required by statute.

As the second assignment of error must be sustained, the judgment reversed, and the case remanded for a new trial, we will not express any opinion as to the guilt or innocence of the defendant upon the facts.

By section 1 of chapter 5, Acts of 1919, it is provided:

"When any person is convicted of the crime of murder in the first degree, or as an accessory before the fact of such a crime, it shall be the duty of the jury convicting him in their verdict to fix his punishment, which punishment shall be death in the mode prescribed by law for the infliction of the death penalty in capital cases, or the jury may, if they are of opinion that there are mitigating circumstances, fix the punishment at imprisonment in the penitentiary for life, or for some period over twenty years."

Section 2 of said act provides: "That section 4601 of the Code of Tennessee of 1858, which fixes the punishment of persons convicted of murder in the first degree at death, be and the same is hereby amended so as in all respects to read as and conform to the language of section 1 of this act."

Section 3 of said act provides: "That chapter 181 of the Acts of the Regular Session of the General Assembly of 1915, entitled 'A bill to be entitled an act to abolish the death penalty, except in cases of rape, and convicts serving life terms in State penitentiaries, as punishment for crime, and to substitute therefor the punishment of life imprisonment,' and section 5257 of the said Code of Tennessee, which section authorized the court where any person is convicted of a capital offense, upon the jury finding mitigating circumstances, to commute the punishment to imprisonment for life, and all laws in conflict with this act be, and the same are hereby repealed."

Prior to the passage of chapter 5 of the Acts of 1919, the statutes controlling the validity of the verdict in the instant case were as follows:

(1) Section 2 of chapter 23 of the Acts of 1829 (section 4597 of the Code of 1858; section 6438 of Shannon's Annotated Code) defines murder in the terms of the common law.

(2) By section 3 of said act, which is section 4598 of the Code of 1858 (section 6439 of Shannon's Annotated Code), murder in the first degree is defined.

(3) By the same section of said act, which is section 4599 of the Code of 1858 (section 6440 of Shannon's Annotated Code), murder in the second degree is defined.

(4) By the same section of said act, which is section 4600 of the Code of 1858 (section 6441 of Shannon's Annotated Code), it is provided:

"The jury before whom the offender is tried, shall

143 Tenn.—9 .

ascertain in their verdict whether it is murder in the first or second degree; and if the accused confesses his guilt, the court shall proceed to determine the degree of crime by the verdict of a jury, upon the examination of testimony, and give sentence accordingly."

(5) By the fourth section of said act, which is section 4601 of the Code of 1858 (section 6442 of Shannon's Code of 1896, it is provided that: "Every person convicted of the crime of murder in the first degree, or as accessory before the fact to such crime shall suffer death by hanging."

(6) By chapter 29 of the Acts of 1837 and 1838, which is section 5257 of the Code of 1858 (section 7232 of Shannon's Annotated Code), it is provided that: "The court may also, where any person is convicted of a capital offense, and the jury who convicted him state in their verdict that they are of opinion that there are mitigating circumstances in the case, commute the punishment from death to imprisonment for life in the penitentiary."

(7) By chapter 36 of the First Extra Session of the Acts of 1913, it is provided that: "Whenever any person is sentenced to punishment by death, that court shall direct that the body of such person be subjected to shock by a sufficient current of electricity until he is dead."

It was held by this court, in construing this act, that the fourth section of the act of 1829 (section 4601 of the Code of 1858), as to the death penalty, was not changed thereby (that is, by the act of 1913), and that offenses punishable by death prior to the passage of said act were still punishable under it—that it only changes the method

of inflicting the death penalty from hanging to electrocution. *Shipp* v. *State,* 130 Tenn., 493, 172 S. W., 317.

(8)   By chapter 181 of the Acts of 1915, it is provided: "That the death penalty as punishment for crime be, and the same is hereby abolished, and in lieu thereof, and as a substitute therefor, shall be the punishment. of life imprisonment in the State penitentiary; provided, that this act shall not interfere with the operation of statutes providing for the death penalty as a punishment for the offense of rape; and provided further, that the provisions of this act shall not apply to convicts serving life terms in the State penitentiary who shall be convicted of any offense, now punishable under the law by death by electrocution."

(9)   By chapter 14 of the Acts of 1917, it is provided: "That House Bill No. 94, chapter 181 of the Regular Session of 1915, be and the same is hereby repealed."

The validity of this act was questioned because it does not, in its caption or body, state the title, substance, or subject of the previous act sought thereby to be repealed, but the validity of said act was never passed upon by this court.   The phraseology of the act of 1919 shows that the Legislature recognized that there was a question as to the validity of the act of 1917, and was in doubt as to whether or not capital punishment was in force in this State.   This doubtless prompted the passage of the act of 1919.

It will be noted that, prior to the passage of the act of 1919, the statute made it the duty of the trial judge to impose the death penalty in cases where the defendant had been found guilty of murder in the first degree, un-

less the jury were of the opinion that there were mitigating circumstances, in which event the trial judge, if he deemed it proper to do so, could commute the defendant's punishment to life imprisonment in the penitentiary.

We think the law, as to the assessment of the punishment in cases where the accused is found guilty of murder in the first degree, was changed by the act of 1919. We think that act clearly vests the power to fix the punishment in such cases in the jury. It will be noted that it is provided in the first section of the act:

"When any person is convicted of the crime of murder in the first degree, or as an accessory before the fact of such a crime, it shall be the duty of the jury convicting him in their verdict to fix his punishment," etc.

We think this language of the act clearly vests in the jury the exclusive power and authority to fix the punishment of defendants in cases where they have been convicted of murder in the first degree, and is mandatory; and that, in the action of the trial judge withholding this power from the jury in the instant case, in view of the provisions of the act of 1919, there was error, and the verdict and judgment based thereon are void and cannot be enforced.

It results, therefore, that the judgment will be reversed, and the case remanded for a new trial.